IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BRIAN ERNEST MERRIWEATHER | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | NO. 3:19-cv-00674 |
| | ) | |
| | ) | JUDGE RICHARDSON |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Pending before the Court is Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1, "Petition"), wherein Petitioner seeks vacatur of his conviction and 216-month sentence in his underlying criminal case (Case No. 3:15-cr-00184-2). On July 28, 2020, the Government filed a response in opposition to the Petition (Doc. No. 19, "Response"). For the reasons discussed herein, the Petition (Doc. No. 1) will be **DENIED.**

## BACKGROUND[1]

On October 28, 2015, Defendant was charged in three of the sixteen counts of an indictment filed against him and three co-defendants. The charges against Defendant were as follows: conspiring to distribute and to possess with intent to distribute Oxymorphone and Oxycodone, in violation of 21 U.S.C. § 846 (Count One); and distributing and possessing with intent to distribute oxymorphone, in violation of 21 U.S.C. § 841(a)(1) (Counts Two and Six). (R. 21). Defendant pled not guilty, and trial began on August 9, 2016. The jury found Defendant guilty on all three

---

[1] Unless otherwise noted, the facts in this section are taken from documents on the record of Petitioner's underlying criminal case (Case No. 3:15-cr-00184). Documents cited from Petitioner's underlying criminal case will be cited as "R. __", rather than as "Doc. No. __" which will indicate a citation to a document in Petitioner's civil case (the above-captioned case). The facts in this section are taken as true for purposes of this Memorandum Opinion.

counts on August 11, 2016. (R. 214). On January 23, 2017, visiting United States District Judge Billy Roy Wilson sentenced Defendant to 216 months' imprisonment on each count—a downward variance well below the guideline range of at 262–327 months—with each count to run concurrently with the others. (R. 277, 290). As reflected in the Amended Judgment (R. 290),[2] Defendant timely appealed his sentence to the United States Court of Appeals for the Sixth Circuit. (R. 279). Defendant did not have a different attorney for his appeal; instead, his appeal was handled by his trial counsel. On March 28, 2018, the Sixth Circuit affirmed the judgment.[3] *United States v. Merriweather*, 728 F. App'x 498, 504-13 (6th Cir. 2018).

Petitioner has been serving his sentence at Lexington FMC, and his release date is March 5, 2031. *See* Federal Inmate Locator, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed June 22, 2022). On August 6, 2019, Petitioner filed the instant Motion claiming ineffective assistance of counsel on eleven grounds. (Doc. No. 1).[4]

## SECTION 2255 PROCEEDINGS

28 U.S.C. § 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

---

[2] The original judgment (R. 277) and statement of reasons (R. 278) were filed on January 23, 2017. The Amended Judgment (Doc. No. 290) and amended sealed statement of reasons (R. 291) were issued due to the need to make "corrections on Pages 1, 2 and 3 of the [original] Statement of Reasons [R. 278]." (R. 290 at 1).

[3] The Sixth Circuit did reverse the judgment of two of Defendant's co-defendants. *See Merriweather*, 728 F. App'x at 527.

[4] Petitioner was represented by Mr. Luke Evans for his underlying criminal case and on appeal.

28 U.S.C. § 2255(a). In order to obtain relief under Section 2255, a petitioner "'must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

If a material factual dispute arises in a Section 2255 proceeding, the court must hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). But a petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, even if accepted as true, would entitle the petitioner to federal habeas relief. *See McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008). On the other hand, a hearing may be unnecessary precisely because they *cannot* be accepted as true; that is, an evidentiary hearing is unnecessary "'if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). Relatedly, an evidentiary hearing likewise is not required if the record conclusively shows that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b); *Ray*, 721 F.3d at 761; *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).

For the reasons discussed thoroughly below, an evidentiary hearing is not necessary in this case because Petitioner's stated grounds for relief are either conclusory or contradicted by the record, and the record conclusively shows that Petitioner is not entitled to relief under 28 U.S.C. § 2255. *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (no hearing is required if the motion's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact") (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir.

1995)). Accordingly, Petitioner's request for an evidentiary hearing will be **DENIED**.

**ANALYSIS**

Petitioner relies exclusively upon the theory of ineffective assistance of counsel, asserting that trial counsel's not objecting to, arguing against, or appealing several specific allegedly erroneous rulings or actions of the district court amounted to ineffective assistance of counsel.[5] The Court will first discuss applicable law regarding ineffective-assistance-of-counsel claims, then discuss in turn each particular alleged instance of ineffective assistance by trial and/or appellate counsel (who in this case were the same attorney, as noted above).

I.     Ineffective Assistance of Counsel, Generally

A defendant has a Sixth Amendment right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "It has long been settled that a guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice." *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998) (internal quotation marks and citation omitted). In *Strickland*, the Supreme Court set forth a test to evaluate claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

---

[5]   One might wonder why Petitioner does not directly assert that the (alleged) errors of the trial court—some of which are constitutional in nature and some of which are nonconstitutional in nature—are grounds for relief on this Section 2255 petition. Without speculating about what was in Petitioner's mind, the Court notes that Petitioner would have faced significant challenges in directly asserting these errors as grounds for relief on the instant collateral attack. "Where nonconstitutional issues are at stake, collateral attack should not substitute for a direct appeal. Nonconstitutional errors are therefore waived for purposes of collateral review unless the error amounts to a denial of due process." *Tinsley v. United States*, 107 F.3d 871 (6th Cir. 1997) (citation omitted). And as to constitutional claims, "the petitioner must demonstrate cause for, and prejudice from, his failure to present his section 2255 claims at trial or on direct appeal" *Id.* (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)). Most if not all of the alleged errors of the trial court underlying Petitioner's ineffective-assistance-of-counsel claims were raised neither in the trial court nor an appeal; indeed, the fact that they were not raised is precisely what allegedly made counsel ineffective. Thus, to be cognizable in the instant collateral attack, the trial court's alleged errors could not be challenged directly, but rather needed to be presented as the errors underlying Petitioner's ineffective assistance of counsel claims, which need not have been raised in the trial court or on appeal to be cognizable here. *See,* e.g., *Massaro v. United States*, 538 U.S. 500, 504 (2003).

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that rendered the result unreliable.

*Strickland*, 466 U.S. at 687.[6] Under the first prong of the *Strickland* test, a petitioner must establish that his attorney's representation fell below an objective standard of reasonableness. *Id.* at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Id.* at 688. Strategic choices made by counsel after thorough investigation are virtually unchallengeable. *Id.* at 690. Petitioner bears the burden of proving by a preponderance of the evidence that counsel was deficient. *See Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citing *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006)).

Under the second prong of *Strickland*, the petitioner must establish that the attorney's poor performance prejudiced the defense of the case. *Monea*, 914 F.3d at 419. "Courts need not address the first element if the petitioner cannot prove prejudice. In fact, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Id.* (quoting *Strickland*, 466 U.S. at 697). "Proving prejudice is not easy." *Id*. Petitioners face a "high burden" in demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted).

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). Court appointed

---

[6] The Sixth Circuit has concluded that the *Strickland* standard discussed herein applies to ineffective assistance of appellate counsel as well. *Jackson v. Bradshaw*, 681 F.3d 753, 774 (6th Cir. 2012).

counsel, however, does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). An attorney's failure to present a non-meritorious issue on appeal does not constitute ineffective assistance of counsel. *Daniel v. Overton*, 845 F. Supp. 1170, 1176 (E.D.Mich.1994).

To obtain an evidentiary hearing on a claim of ineffective assistance of counsel, however, a petitioner must present more than conclusory statements. *See Lovejoy v. United States*, No. 95-3968, 1996 WL 331050, at *3 (6th Cir. June 13, 1996) (acknowledging that conclusory statements are insufficient to warrant habeas relief); *see also Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (holding that a "conclusory statement" without more is "wholly insufficient to raise the issue of ineffective assistance of counsel"). Thus, where the petitioner has not provided any detail to support his or her claims, those claims should be dismissed. *See Johnson v. United States*, 457 F. App'x 462, 466-67 (6th Cir. 2012); *United States v. Domenech*, No. 1:06-CR-245-2, 2013 WL 3834366, at *2 (W.D. Mich. July 24, 2013).

The Court will address each of Petitioner's asserted grounds for relief in turn.

II.     Particular Alleged Instances of Ineffective Assistance of Counsel

A.     *Ground One: Failure to Appeal the Drug Calculation*

In Ground One, Petitioner asserts that his trial counsel provided ineffective assistance of counsel when he did not raise on appeal the quantity of pills that was attributed to Petitioner at sentencing, which, Petitioner contends, was "ultimately used to place [Petitioner] in the suggested Guideline range." (Doc. No. 1 at 52). Petitioner asserts that there were five problems with the Court's conclusion regarding the pill calculation to which his counsel should have objected: (1) presiding Judge Bob Roy Wilson failed to make particularized findings (*id.* at 48); (2) the Court "erred to the substantial prejudice of [Petitioner] when it allowed [Shanay Anthony's] out-of-court statements" linking Petitioner to the conspiracy into evidence (*id.* at 49); (3) the Court erred in

relying on Anthony Seay's contradictory unsworn testimony while ignoring his sworn testimony that he had "'never seen [Petitioner] with any drugs and pills'" (*id.* at 50); (4) the Court erred in relying on the testimony of Raymond Poindexter, who (according to Petitioner) is an unreliable witness (*id.* at 50–51); and (5) it ? unfair to calculate Petitioner's pill quantity as the same quantity attributable to others in the conspiracy, because Petitioner was in custody from April 4, 2014 until October 22, 2014 (*id.* at 50).

In Response, the Government argues, among other things, that "[e]ven if [Petitioner's counsel] had appealed the pill quantity—and won—[Petitioner's] Guidelines range would not have changed because the quantity of pills was largely irrelevant for purposes of the Guidelines. The Career Offender Guidelines (34) were higher than the drug Guidelines (32), and thus controlled the final Guidelines calculation." (Doc. No. 19 at 18).

The Court agrees with the Government that regardless of whether Defendant's counsel's performance was deficient in failing to appeal the drug calculation, Petitioner cannot show prejudice as required by *Strickland*. It is clear from the record (the transcript of the sentencing hearing and the PSR) that Petitioner's guideline range relied on by the Court was driven by his status as a career offender, not the drug quantity. Petitioner's career offender status put him at an offense level of 34, which combined with a Criminal History Category VI, set the sentencing guidelines at 262–327 months. (*See* PSR at 32). This is the offense level that Judge Wilson relied on at the sentencing hearing.[7] (R. 297 at 20-21 (stating at the sentencing hearing that "Guidelines based on a total offense level of 34 and a Criminal History Category of VI, the guideline

---

[7] Moreover, the Court also explained how it arrived at the Career Offender offense level 34. At the sentencing hearing, Judge Wilson explained, "Chapter 4 enhancements, he was at least 18 years old at the time of the instant offense of conviction. The instant offense is a controlled substance offense. And he has at least two prior felony convictions of either a crime of violence or a controlled substance offense; therefore, he is a career offender. That puts the level at 34, according to the presentence report." (R. 297 at 20-21).

imprisonment range is 262 to 327.")). Thus, Petitioner's operative guideline range was not based on the calculations under Chapter Two of the Sentencing Guidelines (which, for offenses like Petitioner's that are covered by U.S.S.G. § 2D1.1 are based in part of drug quantity), but rather on the career-offender guidelines under Chapter Four, which are not based on drug quantity (such as pill count). For this reason, counsel's alleged deficiency in not challenging on appeal the supposedly flawed (due to a supposedly erroneous pill quantity) Chapter Two guideline range was harmless. *See Stephens v. United States*, No. 3:17-CR-91-TAV-DCP-3, 2021 WL 5406031, at *4 (E.D. Tenn. Nov. 18, 2021) ("Moreover, even if counsel was somehow deficient in failing to object to the drug quantity in the PSR, petitioner suffered no prejudice, as her guideline calculations were ultimately calculated based on her career offender status, not her drug quantity."); *Girard v. United States*, No. 97-421ML, 1997 WL 839178, at *3 (D.R.I. Sept. 8, 1997) ("[B]ecause petitioner was sentenced as a career offender, any alleged miscalculation of his non-career offender offense level did not impact upon the term of sentence imposed. Thus, petitioner cannot establish the requisite "prejudice" to excuse his failure to raise his challenge to the guideline calculation during the course of his direct appeal.").

In short, Petitioner cannot show that if Petitioner's counsel had appealed the sentencing judge's determination as to the amount of pills Petitioner possessed for purposes of the guideline calculation under U.S.S.G. § 2D1.1, the results of the proceedings would have been different— that he would have received a sentence lower than the sentence of 216 months that he did receive. *See Davis*, 658 F.3d at 536 (explaining that a petitioner has a "high burden" to show prejudice, *i.e.*, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

Because the record conclusively establishes that Petitioner has failed to establish prejudice

as to the grounds asserted in Ground One, relief as to Ground One will be denied without an evidentiary hearing.

### B. Ground Two: Failure to Argue that the Court Violated 18 U.S.C. § 3553(c)

In Ground Two, Petitioner asserts that his trial counsel was ineffective by failing to argue at sentencing and on appeal that Judge Wilson did not sufficiently explain as required how the sentencing factors under 18 U.S.C. § 3553(a) justify the sentence imposed. (Doc. No. 1 at 52).[8] Petitioner argues that "when the record clearly shows that the sentencing judge did not adequately explain the sentence imposed, a violation of § 3553 must be presumed." (*Id.* at 52–53).

In response, the Government argues, among other things, that Petitioner cannot show prejudice. (Doc. No. 19 at 20). According to the Government, if Petitioner's counsel had "raised an objection, it is likely that the Court would have simply spelled out its analysis in more detail, thereby obviating the issue for purposes of appeal." *Id*. On the other hand, the Government asserts that "[e]ven if the Court had responded to an objection by stating that it had already addressed the argument in a satisfactory manner, there is no reasonable probability that it would have resulted in a remand after appeal." *Id*. Thus, the Government contends that Petitioner cannot show "a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *Davis*, 658 F.3d at 536.

The Court does not take issue with the assertion that Section 3553(c) was not complied with here. But even assuming arguendo that Section 3553(c) was violated, the Court agrees with the Government that Petitioner has not shown prejudice from such violation. In his brief discussion of his basis for Ground Two, Petitioner does not explain how the outcome (*i.e.*, the length of his

---

[8] Section 3553 requires that "[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence . . . [is] outside the [guideline] range, . . . the specific reason for the imposition of a sentence different from that described[.]" 18 U.S.C. § 3553(c).

term of imprisonment) would have been different if Judge Wilson had offered an explanation. (*See* Doc. No. 1 at 52-53). Indeed, he offers nothing to convince the Court that if Petitioner's trial counsel had rendered this objection, Judge Wilson would have done anything more than simply add to the record an explanation. And even assuming that Judge Wilson had overruled such an objection (and thereby refused to offer further explanation) and that such overruling would have been erroneous, and assuming also that the Sixth Circuit had reversed on this basis, there is no reason to believe that Judge Wilson would have sentenced Petitioner to a more lenient sentence— even representing an even greater variance than the substantial variance he received the first time— on remand merely because he would be required to articulate an explanation of the Section 3553(a) sentencing factors on remand. In short, as to Petitioner's "argu[ment] that counsel was ineffective for failing to raise the 3553(c) issue, we reject the argument for any prejudice is entirely speculative." *Bazua-Aviles v. United States*, 1998 WL 879731, *1 (9th Cir. Dec. 16, 1998)(citing *Strickland,* 466 U.S. at 687).

Thus, Petitioner has not explained how his trial counsel's failure to object or appeal on this basis prejudiced him. And he would likely have a difficult time doing so as he received a below-guidelines sentence. Accordingly, Petitioner has not met his burden to show prejudice as a result of his counsel's failure to object or appeal the sentencing judge's (alleged) lack of explanation of the sentencing factors; relief on the basis of Ground Two is therefore denied.

C.     *Ground Three: Failure to Argue or Appeal that Count Six was Aiding and Abetting*

In Ground Three, Petitioner claims his counsel was ineffective because he "should have argued, as instructed by his client, that Count Six was aiding and abetting." (Doc. No. 1 at 53). The Court is not entirely sure what Petitioner is arguing here. For one thing, there is no such thing as "downgrading" an offense to aiding and abetting; aiding and abetting is a basis of criminal liability on a federal charge (and not a way of "downgrading" a charge), and under federal law a

person who aids and abets a charged offense is criminally liable just as if he or she was the principal committing the offense. *See* 18 U.S.C. § 2(s). Also, it is unclear how, according to Petitioner, "downgrading" the offense to aiding and abetting would have assisted Petitioner's defense anyway; the invocation of the notion of "aiding and abetting" would merely have presented the Government with an additional potential basis for Petitioner's liability beyond his being liable as a principal.

In connection with Ground Three, Petitioner also claims he "never knowingly or intentionally possessed Oxymorphone. . . Therefore, the § 841 drug offense does not meet the first element and should have been downgraded to aiding and abetting." (*Id.*). The Court will construe Petitioner's argument on Ground Three (so that it is at least cognizable) to be that his counsel should have argued that Petitioner was not guilty of Count Six because (according to Petitioner) he never knowingly possessed (and thus, it follows, also did not knowingly distribute or possess with the intent to distribute) Oxymorphone on June 3, 2015 as alleged in Count Six.

In response, the Government points to the trial record, in which Defendant's counsel said in his closing statement, "Now, the jury charge tells you, the law that the judge read to you, tells you just being present, not enough. Just being present, not enough. He had to have acted -- he had to have encouraged it. How did he effect it? How did he effect it at all? Beyond a reasonable doubt? No. Mere presence is not enough." (Doc. No. 29 at 21 (citing R. 236 at 57)). As for the appeal, the Government cites Defendant's appellate brief, in which he stated, "'[Defendants'] mere presence on [June 3, 2015] is not enough to prove that he encouraged or participated in the sale, such that the proof is insufficient to sustain his conviction.'" (Doc. No. 19 at 21 (citing Case No. 17-5077, Doc. No. 22 at 21)). Thus, the Government argues that because Petitioner's assertion that his counsel did not argue that (because he supposedly never knowingly possessed oxymorphone) he

was not guilty of Count Six is belied by the record, Petitioner cannot show deficient performance or prejudice.

The Court agrees with the Government that Petitioner's assertion underlying the basis of Ground Three is inconsistent with the record. The record is clear that Petitioner's counsel did indeed argue at trial and on appeal that Petitioner was not guilty of Count Six because he did not possess the drug. Accordingly, Petitioner has not met his burden to show deficient performance or prejudice and relief on the basis of Ground Three is denied.

### D.  *Ground Four: Failure to Object to Jury Instructions*

In Ground Four, Petitioner claims that his counsel was ineffective because he did not object to or appeal the following jury instruction: "if you find [Petitioner] guilty on one count you must find him guilty of them all." (Doc. No. 1 at 55). Petitioner also asserts that his counsel was ineffective because he did not object to Judge Wilson using the Eighth Circuit pattern jury instructions, rather than Sixth Circuit pattern jury instructions. (*Id.* at 56). Petitioner contends that this jury instruction conflicts with the other instructions, as well as the Sixth Amendment, which "affords criminal defendant's 'right to have a jury, rather than a judge, reach the requisite finding of guilty.'" (*Id.* at 55) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993)).

In response, the Government argues that Petitioner's assertion that this specific jury instruction was given by Judge Wilson "is completely belied by the record. In fact, the record confirms that the Court did *not* give this instruction." (Doc. No. 19 at 23). As for the use of Eighth Circuit pattern jury instructions, the Government claims Petitioner "has not identified any specific jury instructions he contends are improper or any legal basis upon which Mr. Evans could have lodged an objection." (*Id.*).

The Court has reviewed the transcript of Petitioner's trial and indeed, the Court did not give the instruction "if you find [Petitioner] guilty on one count you must find him guilty of them

all." (*See* R. 236). Accordingly, Petitioner has failed to show deficient performance or prejudice in his counsel's supposed failure to object to a jury instruction that was never given. For the same reason, counsel was not deficient in failing to raise these issues on his direct appeal. Furthermore, Petitioner's assertion that the Eighth Circuit pattern jury instructions (which are largely similar to the Sixth Circuit pattern jury instructions) prejudiced his case is wholly conclusory; a "conclusory statement" without more is "wholly insufficient to raise the issue of ineffective assistance of counsel." *Elzy*, 205 F.3d at 886. Thus, relief on the basis of Ground Four is denied.

      E.      *Ground Five: Failure to Give Petitioner Opportunity to Accept Plea Offer*

In Ground Five, Petitioner claims ineffective assistance of counsel based on his trial counsel's alleged failure to sufficiently advise Petitioner regarding the offered plea deal, specifically that "counsel advised [Petitioner] to decline the offer" and "failed to advise [Petitioner] about his sentencing exposure." (Doc. No. 1 at 10). He asserts that "[i]n December 2015, the government conveyed a plea offer to petitioner, through counsel, consisting of a 160-month sentence . . . . Subsequently, by letter, counsel advised the Petitioner to decline the offer. Counsel reasoned that because the government's case was primarily based on [a co-defendant's] testimony, and [the co-defendant's] testimony was weak, the 160-month offer was too high." (Doc. No. 1 at 10). Petitioner further contends that his counsel failed to discuss "his sentencing exposure" and "failed to inform him that he would likely receive a prison sentence of at least 262 months [the lowest end of his guideline range] if he was convicted at trial[.]" (*Id*. at 10-11). Petitioner asserts that he "would have entered a guilty plea in exchange for a 160-month sentence if he had known that going to trial involved a risk that he could receive a prison sentence of at least 216 months— 56 months longer than the plea offer—or even [a sentence within the guideline range of] 262-327 months." (*Id*. at 11).

In response, the Government points to Petitioner's counsel's affidavit (Doc. No. 19-1,

"Affidavit"), wherein his counsel avers that he advised Petitioner on the sentencing guidelines as well as the amount of evidence against him. (*Id.* at 2–3). Petitioner's counsel states in his Affidavit that he "met with [Petitioner] multiple times, in person and on the phone, to discuss the sentencing guidelines, whether he should enter a guilty plea, whether he should accept the government's plea offer, and the risks and benefits of going to trial." (*Id.* at ¶ 7). Furthermore, Petitioner's counsel states that he advised Petitioner that he "would be classified as a career offender and his offense level was 34, which corresponded to 262-327 months' imprisonment." (*Id.* at ¶ 9). Thus, the Government contends that due to this Affidavit, Petitioner cannot demonstrate that his counsel's performance was deficient. (Doc. No. 19 at 24-25).

"[T]he failure of defense counsel to 'provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance.'" *Smith v. United States*, 348 F.3d 545, 552–53 (6th Cir. 2003) (quoting *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003)).

Here Petitioner's counsel avers in his affidavit that he informed Petitioner of the guideline range, specifically that he would be classified as a career offender, prior to Petitioner's decision to plead guilty. (Doc. No. 19-1). Petitioner disputes that this occurred in his Petition. (Doc. No. 1 at 10-11). However, Petitioner does not include in his own affidavit[9] any averments regarding his counsel's alleged failure to advise him of his sentencing exposure or any averments regarding his plea offer generally. (*See* Doc. No. 1 at 59). The Sixth Circuit and other courts have rejected ineffective assistance claims that rest solely upon unsupported allegations of counsel's deficient performance. In *Ross v. United States*, 339 F.3d 483, 494 (6th Cir. 2003), the petitioner asserted that his counsel was "ineffective for failing to adequately meet with [him] during trial," but he

---

[9] Petitioner filed (as part of the same filing that included the Petition, Doc. No. 1) an affidavit of his own, which includes just a few lines of substantive averments. (Doc. No. 1 at 59).

"offer[ed] no citation to the record to support his conclusion." The court rejected this claim of ineffective assistance of counsel, explaining that "[a]n allegation entirely unsupported by the record [does not satisfy] the *Strickland* inquiry." *Ross*, 339 F.3d at 494; *see also United States v. Poe*, No. CR 2:19-40-DLB-MAS-1, 2021 WL 1246950, at *3 (E.D. Ky. Feb. 26, 2021) (denying an evidentiary hearing where "defense counsel's affidavit [DE 38-1] in response to Poe's § 2255 motion confirms that the relevant plea-related discussions centered around career offender enhancement applicability, and not Armed Career Criminal Act applicability [as the petitioner contended in his petition]. [The petitioner], despite opportunity, did not challenge the assertions in counsel's affidavit."); *Galbraith v. United States*, 313 F.3d 1001, 1008–09 (7th Cir. 2002) (affirming the district court's rejection of a claim of ineffective assistance of trial counsel, where the petitioner offered only his own "naked assertions" as to his counsel's deficient performance and "present[ed] no affidavit from himself or his trial counsel supporting his version of his attorney's conduct, nor any other available, probative evidence that would effectively support [his] claim").

Thus, absent a signed affidavit setting forth the specific facts Petitioner relies on in Ground Five, the Court finds that no evidentiary hearing is required. The Sixth Circuit has observed that a § 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is "relatively light." *Smith v. United States*, 348 F.3d 545, 550 (6th Cir.2003). However, no hearing is required if the petitioner's allegation cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements or fact. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir.1999). Here, the Court finds that Petitioner has not met this burden because his allegations are contradicted by the only evidence in the record on this point, and that therefore an evidentiary hearing is not warranted. Thus, relief on Ground Five is denied.

*F.*      *Ground Six: Failure to Object to Admission of Seay and Poindexter Testimony*

In Ground Six, Petitioner claims ineffective assistance of counsel based on his trial counsel's failure to object to or appeal the admission of Anthony Seay and Raymond Poindexter's testimony at trial. These assertions, again, are inconsistent with the record.

First, Petitioner argues that his counsel should have objected at trial to Seay and Poindexter's testimony describing "specialized jargon unique to pill trafficking" found in the text messages extracted from Petitioner's phone because this was improper "expert testimony". (Doc. No. 1 at 17-20).  According to Petitioner, his counsel should have objected to the Government's failure to proffer Seay and Poindexter as experts. (Doc. No. 1 at 17-20). However, in making this argument, Petitioner simultaneously concedes that his counsel did object to Seay and Poindexter's testimony about terms common to the drug trade. (*Id*. at 17 ("With regard to Seay, the government proposed at the outset to question him "about some terms." Counsel objected to this line of questioning as calling for Seay's opinion as to what those terms mean because they're not the common usage of those terms [and requested a limiting instruction.]"; *id*. at 19 ("Turning to Poindexter, he testified that "opana" was also understood by the slang 'moon' and 'panda bear.' Counsel registered an objection, reminding the court that it had sustained his objection to an identical question posed to Seay, but the court reversed course and overruled the objection without explanation."))).

The record confirms that Petitioner's counsel did indeed object to Seay and Poindexter testifying to terms used in the drug trade. Whenever the Government asked Mr. Seay to define "some terms," Petitioner's counsel asked the Court to approach the bench where he then stated, "Judge, I anticipate that the government's getting ready to ask this witness to go through and define terms that are quote, unquote, drug terms. That goes beyond—he's giving his opinion as to what

those terms mean because they're not the common usage of those terms." (R. 234 at 129). The Court overruled Petitioner's counsel's objection and allowed Mr. Seay to testify as to "slang in the drug business." (*Id*.). Counsel additionally objected to Poindexter testifying about these terms, which the Court also overruled. (R. 235 at 65).

Moreover, Petitioner has not identified how this alleged "failure to object" prejudiced his case, *i.e.*, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," which is his burden to do. *Davis*, 658 F.3d at 536. Petitioner has not asserted that if Seay and Poindexter's testimony regarding drug-trade jargon was excluded, it would have resulted in a not guilty verdict. Accordingly, Petitioner has not alleged any facts that would establish deficient performance or prejudice. Therefore, relief under Ground Six will be denied without an evidentiary hearing.

G.      *Ground Seven: Failure to Object and Appeal Trial Court's Preliminary and Final Jury Instructions*

In Ground Seven, Petitioner argues his counsel was ineffective because he failed to object to and appeal the Court's preliminary and final jury instructions. (Doc. No. 1 at 24). Petitioner alleges that his counsel failed to object to the instructions that the jurors must "'make every reasonable effort . . . to reach [a] unanimous agreement' [and should] 'not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.'" (*Id.* (quoting R. 212 at 29)). Thus, Petitioner asserts that "[t]he defining error of these instructions is that they ask the jurors to reexamine their own views and the views of others. Together, they suggest that jurors in the minority should reconsider their position." (*Id*.).[10]

_____

[10] Petitioner's argument theory that these instructions were prejudice because of their supposed (improper) effect on "jurors in the minority" is not helped by the fact that the record contains no indication (such as, for example, a note suggesting that the jury was deadlocked at the time) that there ever was a minority of jurors initially inclined to acquit Petitioner.

In response, the Government points out that Petitioner failed to disclose the paragraph that was read immediately following the instruction Petitioner attacks, which read, "[b]ut do not change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience." (R. 212 at 29). The Government argues that the record, once again, belies Petitioner's argument and he therefore cannot show deficient performance or prejudice.[11] (Doc. No. 19 at 28).

---

[11] The pattern instructions read:

> Let me remind you that it is your duty as jurors to talk with each other about the case; to listen carefully and respectfully to each other's views; and to keep an open mind as you listen to what your fellow jurors have to say. And let me remind you that it is your duty to make every reasonable effort you can to reach unanimous agreement. Each of you, whether you are in the majority or the minority, ought to seriously reconsider your position in light of the fact that other jurors, who are just as conscientious and impartial as you are, have come to a different conclusion.
>
> … None of you should hesitate to change your mind if, after reconsidering things, you are convinced that other jurors are right and that your original position was wrong….
>
> But remember this. Do not ever change your mind just because other jurors see things differently, or just to get the case over with. As I told you before, in the end, your vote must be exactly that—your own vote. As important as it is for you to reach unanimous agreement, it is just as important that you do so honestly and in good conscience.

(Doc. No. 19 at 28 (quoting 6th Cir. Pattern Jury Instruction 9.04)).

For comparison, the full instructions in question in the case at bar read:

> Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

The Court agrees. When viewing the instruction in whole, it is clear that the Court did not "suggest that jurors in the minority should reconsider their position," as Petitioner contends. At most, the instruction as a whole suggested that jurors (all jurors, and not just those initially in the minority) should remain *open to the possibility* that they should reconsider their position—a suggestion that is entirely appropriate. Accordingly, Petitioner fails to demonstrate that his counsel rendered ineffective assistance as alleged because the grounds stated are simply inconsistent with the record. Accordingly, relief on the basis on Ground Seven is denied.

> H.    *Ground Eight: Failure to Object to and Appeal the Court Telling Jurors not to Ask for Transcript Readback while also Instructing them to Ask Questions*

In Ground Eight, Petitioner contends that his counsel provided ineffective assistance of counsel when he did not object to or appeal the following jury instructions (1) "it won't be practical for the court reporter to read back lengthy testimony, so it's important that you listen carefully," (given before trial began) and (2) "[i]f you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the court security officer," and the Court would "respond as soon as I can" (given immediately before jury deliberations). Petitioner contends that, when read together, these jury instructions are "inconsistent, confusing, and misleading." (*Id.* at 27).

As the Government notes, Petitioner "does not elaborate on how these instructions . . . are inconsistent, confusing, or misleading." (Doc. No. 19 at 29). The Court agrees that beyond the blanket statement that the two instructions were "inconsistent, confusing, and misleading,"

---

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

(R. 212 at 28).

Petitioner fails to explain how his counsel's failure to object amounted to deficient performance, nor how it was prejudicial. Accordingly, his claims in relation to Ground Eight are too conclusory to merit an evidentiary hearing. Furthermore, the Court concludes that conveying the substance of the first challenged jury instruction (regarding the jury's inability to rely upon the court reporter's transcription of testimony when determining what the testimony had been) is both prudent and common. The second jury instruction regarding messages to the court is a common pattern instruction given in most criminal trials, and the instruction indeed is not inconsistent, confusing, or misleading. Thus, Petitioner could not show his counsel's deficient performance in failing to object to (or appeal) the instructions in any event. Accordingly, relief on account of Ground Eight is denied.

I.     *Ground Nine: Failure to Object and Appeal to Court's Use of the Stipulation Concerning the Drugs*

In Ground Nine, Petitioner argues that his counsel rendered ineffective assistance when he failed to object to or appeal the Court's use of a stipulation that Government's exhibits 1e and 2d contained oxymorphone. (Doc. No. 1 at 27). Petitioner contends that this stipulation "violate[d] [his] Sixth Amendment right to have a jury determine his guilty beyond a reasonable doubt, namely the court invaded the jury's province by declaring that certain facts had been conclusively established, and the jury neither determined whether those facts, essential to conviction were established beyond a reasonable doubt." (Doc. No. 1 at 27). He asserts that his counsel rendered ineffective assistance when he "failed to notice, object, and appeal this structural error." (*Id.* at 19). The stipulation Petitioner complained of was read into the record at trial as follows:

> The parties hereby agree and stipulate to the following facts: A chemist with the Tennessee Bureau of Investigation tested the pill contained in the United States Exhibit 1e and determined it contained oxymorphone, a Schedule II controlled substance. A chemist with the Tennessee Bureau of Investigation tested the pills contained in the United States Exhibit 2d and determined they both contained oxymorphone, a Schedule II controlled substance.

(R. 234 at 107-08).

Stipulations such as the one entered into at Petitioner's trial are routinely entered into during criminal trials. S*ee Fossyl v. Milligan*, 317 F. App'x 467, 476, (6th Cir. 2008) (stipulations "conserve judicial resources" allowing the parties and the jury "to focus on truly disputed issues"). It is simply not a violation of one's Sixth Amendment rights to use such stipulations at trial. *See United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005). Indeed, the Sixth Circuit has recognized that "factual stipulations to elements of a crime are often the product of a sound trial strategy." *United States v. Monghan*, No. 09–5226, 2011 WL 310704, at *5 (6th Cir. Feb.1, 2011). The record reveals that Petitioner consented to the use of this stipulation at trial. (R. 234 at 108). Indeed, Petitioner signed the stipulation himself. (*Id*.); *see also Cook v. United States*, No. 10-20667, 2016 WL 5867827, at *3 (E.D. Mich. Jan. 11, 2016) ("The Court finds trial counsel's failure to object to the stipulation read at trial does not render his performance deficient. A thorough review of the record shows that he advanced no objection because Cook had assented to the stipulation."). Thus, Petitioner has not demonstrated deficient performance.

Even if trial counsel's performance was somehow unconstitutionally deficient for agreeing to the stipulation read at trial, Petitioner does not establish prejudice. "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citation omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id*. (citation omitted). Petitioner has done nothing to demonstrate that his counsel's "failure to object" to the stipulation prejudiced his case. And he would have a hard time doing so, because as the Government points out, without such stipulation,

the Government could have simply called the chemist to testify that the drugs Petitioner possessed were identified through lab tests as oxymorphone. Thus, Petitioner has failed to demonstrate prejudice, because he has not shown that the outcome would have been different had counsel objected to (or appealed) the stipulation.

Accordingly, relief on Ground Nine is denied.

J.    *Ground Ten: Failure to Object and Appeal Dismissal of Juror Six and Replacement with Juror Seven*

In Ground Ten, Petitioner claims ineffective assistance of counsel based on counsel not objecting to or appealing the Court's dismissal of Juror Six and replacement with Juror Seven. (Doc. No. 1 at 29). Petitioner notes the Juror Six was excused for "a serious transportation issue," but Juror Seven, the replacement juror, had "a conflict with her jury duty and a scheduled court appearance. However, the Court refused to remove Juror Seven." (*Id.* at 30). In response, the Government argues "the Court need not even reach the question whether counsel was ineffective because [Petitioner] has neither alleged nor proved he suffered prejudice as a result of the dismissal of Juror Six. For example, [Petitioner] does not allege—nor is there any support in the record for the notion that—Juror Six was stricken for any improper purpose." (Doc. No. 19 at 33). Thus, the Government argues that Petitioner has not alleged how he suffered prejudice from any alleged deficiency. (*Id.*).

The Court agrees with the Government that Petitioner plainly fails to offer any explanation how the Court's decision to strike Juror Six was in error, and thus, should have elicited an objection from his counsel. Therefore, Petitioner has failed to establish how his counsel's performance was deficient, and Petitioner likewise has failed to explain how this alleged error prejudiced Petitioner in any way. *See Post v. Bradshaw*, 621 F.3d 406, 419 (6th Cir. 2010) (absent articulation of factual contentions to support ineffective assistance claim, petitioner has no entitlement to relief); *United*

*States, v. Fisher*, 38 F.3d 1144, 1147–48 (10th Cir. 1994) (rejecting claims of ineffective assistance of counsel and declining "to fashion [petitioner's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments"); *Brooks v. United States*, 862 F.2d 316 (Table), 1988 WL 121255, at *1 (6th Cir. Nov. 15, 1988) (§ 2255 arguments concerning, inter alia, claims of ineffective assistance, which lacked factual elaboration were properly dismissed). Accordingly, relief on Ground Ten will be denied.

> K.    *Ground Eleven: Failure to Object or Appeal the Increase of Offense Level which Included Attempted Crimes*

In Ground Eleven, Petitioner argues that his counsel provided ineffective assistance when he did not argue that the career-offender provisions of the Sentencing Guidelines, which resulted in a higher guideline range for Petitioner than he otherwise would have had, were inapplicable because Petitioner's prior felony drug convictions were not "controlled substance offenses" for purposes of U.S.S.G. § 4B1.1 in light of *United States v. Havis*, 927 F.3d 382 (6th Cir.) (en banc) (6th Cir. 2019) (en banc).

As background, a defendant who (like Petitioner here) was convicted of a controlled substance offense committed over the age of 17, is a "career offender"—and thus is subject to the career-offender guidelines provisions— if he has two prior felony convictions for a "controlled substance offense" (or a "crime of violence," but Petitioner had no felony convictions for a crime of violence). (Doc. No. 1 at 30-36). The definition of 'controlled substance offense' for purposes of the career-offender guideline is set forth at U.S.S.G. § 4B1.2(b), Here, the Presentence Investigation Report (R. 285, "PSR"), reflected that Petitioner had five prior felony convictions for a controlled substance offenses. (R. 285 at 12).[12]

In *Havis*, the Sixth Circuit held that definition of "controlled substance offense" prescribed

---

[12] The PSR was filed under seal and remains under seal except insofar as its contents are disclosed herein.

at U.S.S.G. § 4B1.2(b) does not include attempt crimes. 927 F.3d at 387.

The Government argues that Petitioner's counsel "was not ineffective for failing to make the arguments advanced in *Havis* because that case was not decided until nearly a year and a half after Petitioner's sentencing," and his counsel could not be ineffective for failing to raise an issue that was based on future case law. (Doc. No. 19 at 33). Further, the Government argues that Petitioner "cannot demonstrate prejudice because he had multiple prior convictions that qualified as career offenses under U.S.S.G. § 4B1.1 notwithstanding the decision in *Havis*." (*Id.*).

The Court agrees with the Government that Petitioner cannot demonstrate that his counsel rendered deficient performance in failing to raise at sentencing case law that did not exist at the time. The Sixth Circuit has explained that courts are to "assess counsel's performance based on 'counsel's perspective at the time, . . . considering all the circumstances . . . rather than in the harsh light of hindsight." *Snider v. United States*, 908 F.3d 183, 192 (6th Cir. 2018) (citing *Bell v. Cone*, 535 U.S. 685, 702 (2002)) (internal quotations omitted). Further, the Sixth Circuit has "repeatedly held that counsel is not ineffective for failing to predict developments in the law, unless they were clearly foreshadowed by existing decisions." *Snider*, 908 F.3d at 192 (citing *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 288 (6th Cir. 2010)).

In *Bullard v. United States*, the Sixth Circuit rejected an ineffective assistance of counsel claim that was identical to the one Petitioner asserts here. 937 F.3d 654, 661–62 (6th Cir. 2019). In *Bullard*, the petitioner alleged that defense counsel was ineffective for failing to raise an objection based on the reasoning that the Sixth Circuit later articulated in *Havis*, which was not decided until after his sentencing. The Sixth Circuit held that the defendant had failed to demonstrate deficient performance, noting that at the time the defendant was sentenced, "our decision in *Evans* held the opposite: 'offering to sell a controlled substance constitutes an attempt

to distribute a controlled substance, and thus a conviction under the statute categorically qualifies as a controlled substance offense.'" *Id*. (citing *United States v. Evans*, 699 F.3d 858, 868 (6th Cir. 2012)); *see also United States v. Alexander*, 686 F. App'x 326, 327–28 (6th Cir. 2017) (per curiam) (holding that any violation of § 39-17-417 is a controlled substance offense); *Havis*, 927 F.3d at 384. The court further explained, "[w]e have repeatedly held that counsel is not ineffective for failing to predict developments in the law." *Id*. (citing *Snider*, 908 F.3d at 192). As a result, the court concluded, "Bullard's ineffectiveness claim on the conduct argument fails under the first prong: it was reasonable for his attorneys not to object." *Id*. Likewise, here, Petitioner's counsel is not ineffective for failing to predict future changes in the law. Accordingly, Petitioner cannot demonstrate deficient performance on that basis.

Moreover, Petitioner has not demonstrated a substantial likelihood that his sentence would have been different had counsel lodged such an objection. As the Sixth Circuit pointed out in *Bullard*, on the prejudice prong, a petitioner "must satisfy a demanding standard: he must show that 'the likelihood of a different result [was] substantial, not just conceivable.'" *Bullard*, 937 F.3d at 662 (quoting *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)). In *Bullard*, the defendant claimed that he was prejudiced when his counsel failed to object to his prior conviction being classified as a career offense because the law at the time was unclear whether such conviction qualified. *Id*. In rejecting his argument, the Sixth Circuit noted that while some law supported the defendant's position, the question whether this type of conviction could be a predicate offense had not been decided. *Id*. at 663. The court reasoned that "while we might agree with Bullard's argument—and while the district court might have decided to drop the enhancement had Bullard objected—that is not enough on collateral review." *Id*. (emphasis in original). The court concluded that the uncertainty in the case law made it reasonable for Bullard's counsel to choose not to

address the issue. *Id.*

Moreover, Petitioner cannot demonstrate that, even with the limitations imposed by *Havis*, he would not have been a career offender. Of the five separate felony convictions identified in the PSR as controlled substance offense, three were for sale of cocaine, one was for conspiracy, and one was for possession with intent to resell cocaine. (PSR at 12). As the Government points out, "[n]one of these offenses suffers from the distinction that disqualified the controlled substance conviction in *Havis*, namely, that the conviction for 'delivery' included 'attempted delivery' of a controlled substance." (Doc. No. 19 at 36-37). In other words, none of the five convictions (let alone four of the five, as would be required to remove Petitioner from the ambit of the career-offender guidelines) is for an attempt crime, and so none would be excluded from the definition of "controlled substance offense" by virtue of Havis. So even if it were true that Petitioner's counsel should have foreseen the principle of *Havis*, (i) Petitioner's counsel was not deficient in not raising the (unhelpful) principle of *Havis*, and (ii) Petitioner was not prejudiced by counsel not raising it, since it would not have prevented the application of the career-offender guideline and thus would not have helped Petitioner to obtain a lower sentence.

Therefore, the record conclusively establishes that Petitioner is not entitled to relief under Ground Eleven.

## CONCLUSION

For the above-stated reasons, the Petition neither has merit nor entitles him to an evidentiary hearing. Thus, Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) will be DENIED, and this action will be DISMISSED.

An appropriate Order will be entered.

_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE